## MOORE v. HOLMAN REAL ESTATE COMPANY.

### Opinion delivered June 18, 1917.

REAL ESTATE BROKERS—COMMISSIONS.—A real estate broker undertook to sell certain property for appellant under a contract containing the clause: "and if the said property be sold or otherwise disposed of during the above period, no matter by whom, or after above period, on information secured through this agency, I agree to pay to said real estate agency a commission of five per cent on the gross amount of the sale." Two months after the expiration of the contract appellant sold the property to a purchaser who had been introduced to him by the appellee broker. *Held*, under the contract, the appellee could recover commissions.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*Harry H. Myers,* for appellant.

1.   In 2 Ark. 363, it is said: ''The higher grade * * * of instruments completely supersedes and destroys a less or subordinate one.'' Appellant contracted with appellee to sell his home within a fixed time and for a certain price, and the evidence shows that appellee failed to find, procure or produce any purchaser, ''able, ready and willing to buy,'' within or after the life of the contract. On the contrary, it is shown positively that it was unable to sell, or even find a purchaser within the time, or afterward. The appellee bases its contention solely on the subordinate clause in the contract that if a sale was made during the three months, or *after* * * * on *information* secured by it, then appellant was to pay the commission, etc.

No bad faith or fraud on the part of appellant is shown, and appellee had abandoned all efforts to sell. The contract must be construed as a whole and all its clauses made consistent, if possible. 87 Ark. 97; 94 *Id.* 461; 99 *Id.* 112. The intention of the parties must be gathered from the whole contract. 94 Ark. 461; 34 *Id.* 303, etc. A contract is construed most strongly against the party drafting it. 73 Ark. 338; 74 *Id.* 41; 84 *Id.* 431, etc. It is not reasonable to suppose that appellee would *knowingly* have executed such a contract, if he had known of this latter clause. Appellee never found a purchaser and was not the procuring cause of one. 23 Am. & Eng. Enc. Law (2 ed.), 919; 55 Ark. 576; 80 *Id.* 254; 87 *Id.* 510; 97 *Id.* 23; 98 *Id.* 312; 19 Cyc. 240, 242, 246; 110 Ark. 140; 53 *Id.* 49, etc. No extension of time was asked or granted, nor was the time waived. 89 Ark. 195; 112 *Id.* 232; 106 *Id.* 536; 111 *Id.* 190; 112 *Id.* 232 and others. Time was of the essence of the contract. 9 Cyc. 602, 604; 111 Ark. 75; 112 *Id.* 232.

The court erred in directing a verdict. The case should have been submitted to a jury and the instructions

requested by defendant given.  Cases *supra*.  79 Ark. 629; 35 *Id.* 756; 101 *Id.* 182.

The two clauses in the contract are repugnant, and the first will control.  120 Ark. 221.  Under the facts and law, there was no liability, and the question, at least, should have been submitted to the jury.

*Carmichael, Brooks & Rector*, for appellee.

1.  The clause relied on by appellee is not ambiguous and needs no construction.  It is plain, and words are to be taken in their ordinary acceptation and meaning.  For "information," see Standard Dictionary, 4 Words & Phrases, 3585.

It is conceded that Mr. Fones of the Holman R. E. Co. furnished the information and brought the parties together.  There was nothing for the court to do except to direct a verdict.  It was not necessary to find a purchaser.  All that was necessary was to bring the parties together.  89 Ark. 289; 87 *Id.* 506.

As to appellant not understanding what the contract meant, see Lieber's Hermeneutics, p. 18.

The contract is clear; no error is disclosed in the record, and the judgment should be affirmed with the penalty.

SMITH, J.  Appellee is a corporation engaged in the real estate business in the city of Little Rock, and entered into a contract with appellant, whereby it undertook to sell for him a house and lot for a commission of 5 per cent.  The contract was dated August 7, 1915, and gave appellee an exclusive agency for a period of three months, and contained the following provision:

"And if the said property be sold or otherwise disposed of during the above period, no matter by whom, or after above period, on information secured through this agency, I agree to pay to said Holman Real Estate Company a commission of 5 per cent. on the gross amount of the sale."

The property was listed with appellee to be sold for $6,500, but appellee was unable to effect a sale at that price. During the existence of the agency, a Mr. Fones, representing appellee, showed the property to a Mr. Gay, who expressed himself as pleased with the property, but who declined to pay the price asked. Fones saw Gay several times in regard to the property, and, through correspondence with appellant, who lived in Memphis, Tennessee, attempted, without success, to get the owner and prospective purchaser together on mutually acceptable terms. After the expiration of the agency, Fones told appellant that Gay was pleased with the property, and would buy it if he could get Gay in the house as a tenant. Appellant saw Gay, but failed to rent him the property, as Gay wanted certain improvements which appellant declined to make. Negotiations, however, between appellant and Gay continued, and finally terminated in a contract for the sale of the property at the price of $6,100, for the payment of which sum a long period of time was given.

Appellant testified that he had acted in good faith, and had made no attempt to sell the property until after the expiration of the agency contract, and that he would not have sold the property to Gay had he known that appellee intended to claim or was entitled to a commission, and he testified that appellee was not the procuring cause. Gay gave substantially the same testimony, stating, in effect, that the sale was brought about through the efforts of appellant after the expiration of the agency contract. Gay testified, however, that he did not know anything about the property until it was shown him by Fones, and he admitted that he obtained his information as to who owned the property, and that it was for sale from Mr. Fones while representing appellee. This testimony was undisputed, and it is also undisputed that appellant obtained from appellee the information which put him in communication with Gay, and upon this testimony the court directed a verdict in appellee's favor for the

amount of the commission sued for. The correctness of this action depends upon the interpretation of the clause of the contract set out above.

Appellant asked instructions which declared the law in conformity with his construction of the contract. In these instructions the jury was told that the contract fixed the time within which the sale was to be made, and that time was of the essence of the contract, and the broker was not entitled to his commissions unless he produced a purchaser who was ready, willing and able to buy on the terms and at the price agreed upon and within the three months. Another instruction told the jury there could be no recovery unless appellee was the procuring cause of the sale. Other instructions told the jury that, if a broker attempts, unsuccessfully, to effect a sale, and his proposed purchaser abandons the idea of buying, and the agent stops his negotiations, and the proposed purchaser is afterward induced to buy by the principal, without in any way being influenced by the broker, the latter is not entitled to any commission.

Appellant cites numerous cases announcing the law as stated. But in none of them was there a contract containing a provision like the one set out above. Appellant's brief elaborates the necessity of a finding that appellee was the procuring cause, and insists that this question should have been submitted to the jury. Such, indeed, would be the law under the testimony of appellant, but for the recitals of the contract set out above.

This contract says nothing about procuring cause, and was evidently drawn with the intention of eliminating that question in the event an issue arose between the agent and the owner over a claim of commissions. The contract provides that, if the property is sold or otherwise disposed of, no matter by whom, on information procured through the agency, a commission of 5 per cent. shall be paid. We think no error was committed in refusing to submit to the jury the question whether appellee was the procuring cause or not, for, as stated, the proof is undis-

puted that appellant obtained the knowledge that Gay had looked at the property and had made an offer for it, from appellee, and this information put the owner and purchaser in communication with each other and opened up the negotiations which finally led to the sale.

"Information" is defined in Webster's New International Dictionary as follows:

"1. Act or process of informing; as, endowment with form; inspiration or animation; training or discipline; in modern use, esp., communication or reception of knowledge or intelligence; instruction.

"2. That which is received or obtained through information; specif. a. Knowledge communicated by others or obtained by personal study and investigation; intelligence; knowledge derived from reading, observation or instruction. b. Knowledge of a special event, situation, or the like; news; advices; intelligence."

And the Century Dictionary definition is as follows:

"Knowledge communicated or received; particular intelligence or report; news; notice," etc.

Under these definitions we think the undisputed proof shows that the sale was made on information received through the agency.

It is also finally insisted that a sale would have to be made within a reasonable time on this information, in the absence of bad faith on the part of the owner, to make the owner liable. If this be conceded, we think it may be said, as a matter of law, that the sale was made within a reasonable time, as the sale was perfected within two months after the expiration of the contract. *Bodine* v. *Penn Lumber Co.*, 128 Ark. 347, 194 S. W. 226.

Appellant's statement, that he would not have sold the property at the price and upon the terms upon which he did sell it had he known that a commission would be claimed, can not avail him anything. His contract was in writing, and no contention is made that it was procured by fraud, and his liability under the contract de-

pends upon the construction of the language there em-, ployed.

We think the court properly construed this language, and its action in directing a verdict is affirmed.

McCULLOCH, C. J., (dissenting).  I think the contract ought to be construed to mean that appellee is entitled to a commission if the property had been sold by any one during the three months period of the exclusive agency, or thereafter, if sold on information secured by appellee sufficient to constitute the moving cause of the sale, and that the case ought to have been submitted to the jury on the conflicting testimony.  Appellant and Gay testified that the interviews with Fones, appellee's agent, had nothing to do with bringing about the sale, and the jury could have found that the sale resulted wholly from other and independent causes.

It was error to take the case away from the jury by a peremptory instruction.  Unless the words "on information" used in the contract be construed to mean information which operates as the procuring cause of the sale, or contributed thereto, then it is impossible to say what it does mean, as the other language of the contract furnishes no guide.  It is easy to get the dictionary meaning of the word "information," but what kind of information is it that the contract refers to?  Surely not information that contributed nothing toward procuring the sale.  The parties were contracting about a sale of the property and the payment to appellee of a commission, not as a gratuity, but as compensation for its efforts in procuring a sale. Therefore, the words used are fairly susceptible only to the interpretation that appellee was to be entitled to a commission on a sale made after the expiration of the three-months period on condition that its efforts contributed to a procurement of the sale.  The contract is an unusual one.  A very harsh and unjust one, if given the interpretation placed on it by the majority.  It even provided that if appellant desired to withdraw his property from the market during the three-months period, he must

give appellee thirty days' notice and pay full commissions as if the sale had been made. When a party secures a contract so harsh and burdensome, in language of his own selection, he ought to be held to a very strict interpretation so that he can receive only such benefit as is plainly conferred under the contract. He ought not to be given "something for nothing" unless it is plainly set forth in the contract.

It is said that to construe the words "on information" to mean only information which constitutes the moving cause of the sale, the words would add nothing to the effect, for the reason that the contract meant that anyway without adding those words. I do not think so; what the framer of the contract wanted to clearly express was, principally, that appellee should be entitled to a commission if the property be sold within three months, and if that had been written into the clause now under consideration, and nothing more, appellee would not have been entitled to a commission on a sale made thereafter. So, in order to protect the right of appellee to a commission on a sale made after the expiration of three months, which resulted from the efforts of his agents, this clause was put in; that was the effect we ought to give to it, and nothing more. We ought not to give it the interpretation which renders the contract burdensome and unjust unless the plain language used compels that conclusion. The testimony adduced by appellee tended to show that the efforts of its agents brought about the sale, and that he was justly entitled to a commission. If the case had been properly submitted to the jury, a verdict in appellee's favor should not be disturbed.