**H. M. THOMPSON et al., Appellants,**

**v.**

**L. B. NEWMAN et al., Appellees.**

**No. 4227.**

Court of Civil Appeals of Texas.

Waco.

May 7, 1964.

Hugh L. Umphres, Jr., Amarillo, for appellants.

C. G. Clayton, Amarillo, for appellees.

McDONALD, Chief Justice.

This is an appeal from a judgment discharging the jury, and decreeing that plaintiffs take nothing.

Plaintiffs' suit was to establish a constructive and resulting trust upon the working interest of an oil and gas lease executed to defendants.

Plaintiffs Thompson, D. A. Griffith and C. A. Griffith, filed this suit against Consolidated Gas and Equipment Company, and L. B. Newman its president and alter ego. Plaintiffs alleged that defendant Newman (acting for himself and Consolidated) advised plaintiff D. A. Griffith that he was interested in acquiring leases on lands near known oil and gas production; that Griffith located unleased lands in Carson County, Texas, and advised Newman. Newman agreed with Griffith that if the leases were passed by his geologist, the working interest would be acquired by defendants, subject to a $\frac{1}{16}$ of $\frac{7}{8}$ override interest in Griffith. After such agreement and in reliance thereon, Griffith disclosed to Newman the location of the land; Newman wanted Griffith to go and lease the lands immediately; that when Griffith could not do so Newman suggested that plaintiff Thompson was availible to secure the leases; Griffith agreed that he would pay Thompson for securing the leases (and assigned him a $\frac{1}{3}$ interest in his $\frac{1}{16}$ overriding royalty for same; and also assigned a $\frac{1}{3}$ interest in the $\frac{1}{16}$ overriding royalty to his father, plaintiff C. A. Griffith).

It was suggested that some of the leases would require payment of a bonus, and Newman said that this should be Griffith's burden; Griffith agreed, but said he had no cash and Newman agreed to advance the bonus money, and hold it out of Griffith's overriding royalty payments. Thereafter, Thompson secured the leases which were taken in Consolidated Gas Company's name. Plaintiffs allege that D. A. Griffith and defendants stood in a position of trust and confidence toward each other, by virtue of which facts when Consolidated took the legal title to the leases there arose by operation of law a resulting and constructive trust in favor of plaintiffs. Defendants drilled and took large sums of oil and gas from the lease but refuse to account to

plaintiffs for their ⅟₁₆ override interest (less bonus advance indebtedness). Plaintiffs prayed for judgment that defendants be decreed to hold the lease in trust as to plaintiffs' ⅟₁₆ override and for accounting.

Defendants answered, among other things, that plaintiffs' suit was to recover a commission as real estate brokers, and that they had no real estate license; that the alleged trust, if a trust, was an express trust for an interest in real estate, and unenforceable unless in writing; and that plaintiffs' cause of action is for an interest in real estate upon a parol agreement and is in contravention of the Statute of Frauds.

Trial was to a jury. The evidence reflected (among other things) that plaintiff D. A. Griffith's father, C. A. Griffith, had dealt in the past with defendants on oil and gas leases; that plaintiff D. A. Griffith located 2 or 3 sections of unleased land near production; that the Griffiths went to see defendant Newman. Newman agreed to give D. A. Griffith ⅟₁₆ override for information as to the location of the property; that Newman wanted Griffith to go and lease the land immediately, and when Griffith could not do so, Newman suggested Thompson could do the job, but that Griffith would have to pay him for doing so out of his ⅟₁₆ override. Griffith agreed to this and assigned Thompson ⅓ of his ⅟₁₆ override. Thompson leased the lands, taking the leases in the name of Consolidated. Consolidated drilled, brought in production, but refused to account to plaintiffs, or to assign them the ⅟₁₆ overriding interest. There is evidence that the leases were to be taken by D. A. Griffith in his name and then be transferred to defendants. At the close of the evidence the Trial Court discharged the jury and rendered judgment that plaintiffs take nothing.

Plaintiffs appeal, contending that the uncontroverted evidence shows that they are entitled to judgment establishing a constructive and resulting trust on the ⅟₁₆ of ⅞ override royalty in production from the leases taken in defendants' name. Plaintiffs further contend that in any event the evidence raised a jury issue with respect to facts which a jury could have found in their favor which would entitle plaintiffs to the constructive and resulting trust on the leases involved.

Defendants contend the trial court's judgment correct and that plaintiffs cannot recover as a matter of law, because plaintiffs did not have a real estate broker's license; that the trust involved is an express trust upon an oral contract; and that plaintiffs' cause of action is to recover an interest in real estate under an oral contract, in contravention of the Statute of Frauds.

In essence the facts show that defendants promised plaintiff D. A. Griffith that if he would reveal the location of unleased mineral land, which defendants found desirable to drill, then Griffith should have a ⅟₁₆ overriding royalty. In reliance on such promise, Griffith revealed the location of the acreage, which defendants leased and drilled; but refused to convey to Griffith and his assigns, the promised overriding royalty.

It is our view that under the facts, Griffith did not act as a broker or real estate dealer, hence required no real estate broker's license. A more difficult question is presented as to whether plaintiffs' cause of action contravenes the Statute of Frauds. If plaintiffs' pleading and proof establish a constructive trust, or raise a jury issue with respect to facts, which a jury could find in their favor, which would entitle plaintiffs to a constructive trust on the lease involved, plaintiffs' cause does not contravene the Statute of Frauds (or the Texas Trust Act).

We observe that when an appellate court comes to consider the propriety of the trial court's having given an instructed verdict (and this is the situation here), such court must view the evidence in the light most favorable to the party against whom the verdict was instructed. Fitz-Gerald

v. Hull, 150 Tex. 39, 237 S.W.2d 256; White v. White, 141 Tex. 328, 172 S.W.2d 295.

■ Broadly speaking, a constructive trust may arise wherever influence has been acquired and is abused, or confidence has been reposed and is betrayed. 89 C.J.S. Trusts § 151, p. 1051. We think Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256; Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401; and Gaines v. Hamman, Sup. Ct., 358 S.W.2d 557, determinative of the instant case.

Such cases hold, among other things, that a constructive trust is imposed by law because the person holding the title to property would profit by a wrong, or would be unjustly enriched if he were permitted to keep the property. A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor can and does rely, and where the agreement is breached, since the breach of the agreement is an abuse of the confidence. The tendency of the courts is to construe the term "confidence" or "confidential relationship" liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof.

Where one person orally undertakes to purchase land on behalf of another, it may be argued that the other cannot enforce a constructive trust because the undertaking is oral and contravenes the Statute of Frauds. The answer to this objection is that the other is not enforcing an oral contract, but is enforcing a constructive trust based upon the violation of a fiduciary duty.

■ Moreover, the abuse of confidence within the rule may be of an informal relationship where one person trusts in and relies upon another. And the definition of the term "fiduciary" is approved in the Gaines case, supra, as "The term 'fiduciary'

is derived from the civil law. It is impossible to give a definition to the term that is comprehensive enough to cover all cases. Generally speaking, it applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction. The term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations."

■ Under the cited cases, we think the record raises an issue for the jury on the question of the existence of relation of trust and confidence; and that the Trial Court improperly took the case from the jury and rendered judgment.

The cause is reversed and remanded.