**Ned MADDOX, Appellant,**

v.

**Franklin FLATO and Flato Realty Investments, Appellees.**

**No. 270.**

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 28, 1967.

Rehearing Denied Jan. 25, 1968.

Roger L. Turner of Yarborough, Yarborough & Johnson, Dallas, for appellant.

Richard A. Hall, of Branscomb, Gary, Thomasson & Hall, Corpus Christi, for appellees.

## OPINION

NYE, Justice.

This is a suit to recover a commission brought by Ned Maddox, plaintiff, against defendants Franklin Flato and Flato Realty Investments. Plaintiff alleged that the defendants orally agreed to pay for his services rendered in connection with the purchase by Flato Realty Investments of all of the stock of the Main and Akard Investment Corporation. The defendants filed a motion for summary judgment based upon Art. 581–34, Vernon's Ann.Tex.Rev. Civ.Stat. of "The Securities Act" which forbid the maintenance of a suit for a commission by any person not a license security dealer, except under certain exempt transactions as set forth in Art. 581–5 and 600a, Sec. 3, Tex.Rev.Civ.Stat.Ann. of "The Securities Act". Plaintiff filed a motion for partial summary judgment contending that the transaction in question was an exempt one under "The Securities Act" and for which a license is not required as a prerequisite to suit. It was undisputed that the plaintiff was not licensed as either a real estate or a securities dealer or salesman. The trial court sustained defendants' motion for summary judgment and plaintiff has perfected his appeal to this Court.

Where a motion for summary judgment has been granted we accept as true all evidence of the party opposing the motion which tends to support such party's contention and give him the benefit of every reasonable inference which properly can be drawn in favor of his position. Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41 (Tex.Sup. 1965); McDonald Texas Civil Practice, Vol. 4, § 17.26, p. 1395 and authorities cited therein.

The events leading up to the filing of this cause of action began in early 1962 when the Board of Trustees of the Texas Presbyterian Foundation met to consider among other things a proposal to purchase the Main and Akard Investment Corporation, hereinafter called Corporation. Franklin Flato was at that time a member of the Board of Trustees. The Foundation, through its managing director, Mr. Hubert

H. Hopper, employed the plaintiff to try to effectuate a purchase of the Corporation's stock or its assets by the Foundation. After considerable work on behalf of the plaintiff in trying to close the deal between the sellers and purchasers the Foundation decided not to make the purchase. It was understood that had the Foundation purchased the Corporation's stock or assets, the plaintiff's fee would have been $50,000.00. Thereafter, defendant Flato evidenced an interest in purchasing the corporation's stock on behalf of his real estate investment trust. He stated to the managing director Hopper that the services of the plaintiff would be used in the same way that the Foundation had contemplated, in the event that a purchase could be arranged on behalf of the trust.

The plaintiff contacted the owners of the Corporation to determine whether or not the office building (being the principal asset of the Corporation) was still for sale. The president of the Corporation, a Mr. Oxsheer Smith, told the plaintiff that the Kirby Building was not for sale but that he would agree to a sale of the Corporation which owned the building. The sale price was to be about $1,800,000.00. After considerable negotiations a subscription agreement was entered into between Smith and the other stockholders of the Corporation wherein they agreed to convey and did convey to defendant Flato Realty Investments all of the stock of the Corporation in exchange for stock or shares in Flato Realty Investments. Shortly thereafter, the Corporation, by and through its new manager, defendant Flato as President, conveyed the building (the principal asset) to Flato Realty Investments. There was other personal property consisting of some cash on hand, deposits, prepaid insurance premiums, taxes, accounts receivable, etc., represented in the exchange of the corporate shares for Flato Investments' stock. The plaintiff testified by deposition that he had been employed by defendant Flato and

Flato Realty Investments to effectuate this transaction. Smith, the Corporation president, testified by deposition that the plaintiff was not working for him but was working for defendant Flato. The summary judgment evidence shows that the plaintiff contributed considerable time and effort in bringing about the sale and purchase. Neither Smith, defendant Flato Realty Investments, nor defendant Franklin Flato paid the plaintiff the commission for the services rendered by him in connection with the sale and purchase of the Corporation's stock. Whereupon the plaintiff filed this suit for the recovery of his commission.

■ Plaintiff's first point is that the trial court erred in sustaining defendants' motion for summary judgment since there were fact issues raised that plaintiff was employed by defendants to arrange for the purchase of securities for which "The Securities Act" is not applicable. Plaintiff's argument under this point is that "The Securities Act" only attempts to regulate "sellers and sales" and does not undertake to regulate "purchasers". Assuming for summary judgment purposes that the plaintiff was in fact employed by the defendants to arrange for and did consummate the sale and purchase of the Corporation's securities, the plaintiff is met with the provision of Art. 581–34, Tex.Rev.Civ.Stat.Ann. (formerly Art. 600a, § 33b) which provides:

"No person or company shall bring or maintain any action in the courts of this state for collection of a commission or compensation for services rendered in the *sale or purchase of securities,*[1] as that term (securities) is herein defined, without alleging and proving that such person or company was duly licensed under the provisions hereof and the securities so sold were duly registered under the provisions hereof at the time the alleged cause of action arose; provided, however, * * * this Act shall not apply to exempt transactions set forth in Section 5 of this Act * * *."

---

1. Emphasis supplied.

Plaintiff contends that this Act does not undertake to regulate purchasers or to protect sellers against purchasers, arguing that if purchasers were regulated all banks, insurance companies, oil companies and other corporations that buy securities for their own account would be violating the law unless their purchasing employees and agents or servants were licensed security dealers. Citing Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 59 A.L.R.2d 1011 (1956); Dunnam v. Dillingham, 345 S.W. 2d 314 (Tex.Civ.App.-Austin 1961, n. w. h.); Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197 (1940); Fowler v. Hults, 138 Tex. 636, 161 S.W.2d 478 (Tex.Com.App., Op. adopted by Supreme Court 1942). These contentions and arguments are without merit. An analysis of the cited cases and others is appropriate.

In the Kadane v. Clark case, supra, in 1940 the Supreme Court denied the plaintiff the recovery of his commission for services rendered in procuring a purchaser for an oil and gas leasehold interest, holding that the plaintiff had acted in violation of the criminal law in doing things that he claimed he did to earn the commission. The Court in construing the statute did hold that the purpose of "The Securities Act" was for the protection of the public. The Court stated that the object of the Act was to regulate the sale of the securities and to protect the public from those engaged in selling worthless securities.

In 1942 the Commission of Appeals in Fowler v. Hults, supra, was again called upon to interpret "The Securities Act" and again stated that the Act generally was to regulate sales and sellers of securities and not purchasers or buyers. The Court went on to say that had the Legislature intended to require buyers of securities to register under the Act, the legislative intent would have been manifested more clearly in the Act than in using words all relating to "selling." We believe it is important

that the Commission in its opinion, which was adopted by the Supreme Court, stated that:

"We express no opinion as to what may be the effect of the amendments made to the Securities Act by the Forty-seventh Legislature. Acts Reg. Sess., 47th Leg., 1941, Ch. 363, p. 593, Vernon's Ann.Civ. St. art. 600a, §§ *33a, 33b*.[1] The transactions out of which this suit arose were completed long before the amendments were enacted."

One of the amendments the Court was referring to in Fowler, supra, was Section 33b which the Legislature amended in 1941. The Legislature added the words "purchase" and declared in Section 3 of 600a the emergency clause that:

"Sec. 3. The fact that at the present time Chapter 100 of the Acts of the Forty-fourth Legislature, Regular Session, *does not give full protection to the purchasers*[1] of securities made in violation of any provision of this law, and the further fact that there are thousands of sales of securities every day in the State of Texas create an emergency and imperative public necessity that the Constitutional Rule requiring that bills be read on three several days, be suspended, and the same is hereby suspended, and this Act shall be in force and take effect from and after its passage, and it is so enacted."

This Art. 600a, § 33b is now Art. 581-34, Tex.Rev.Civ.Stat.Ann., "The Securities Act."

In 1945 in the case of Shriver v. Stoddard, 188 S.W.2d 892 (Tex.Civ.App.-Dallas 1945, wr. ref.), a case very similar in many respects to the one before this Court, the Court settled the question here presented. In the Shriver case the plaintiff was attempting to recover a commission on a sale of securities owned by the stockholders of an oil company. He was not licensed

1. Emphasis supplied.

under "The Securities Act." He became aware that the stock of the oil company was for sale and conveyed this information to the defendant and requested a five percent commission from the defendant purchaser on the sale price. The defendant purchased the stock and refused to pay the plaintiff a commission. It was plaintiff's contention that he was not representing the seller and therefore exempt from "The Securities Act." Plaintiff there contended he was acting as a go-between in bringing about the sale. The Court, quoting from the Fowler case, supra, stated that prior to 1941 that an unregistered dealer or broker representing a seller of securities could not recover a commission for services rendered. However, the Court pointed out that the amendment to the law as contained in Section 33b now includes any "person or company" representing either the *"seller or the purchaser."* The Court concluded:

" * * * We think the position of such a broker (as a middleman, intermediary or go-between bringing the parties together) is in nowise inconsistent with the provisions of the Securities Act, forbidding unlicensed persons or brokers representing *sellers or purchasers* [1] of securities to institute suit for commission as such brokers. * * *"

In 1956 in Brown v. Cole (supra) the Supreme Court again reiterated that the Act does not undertake to regulate purchasers or to protect sellers against purchasers. "Only sellers and sales are regulated." The Supreme Court was not referring to 600a, § 33b *(now 581–34)* which concerns an action for the recovery of a commission. In Brown the Court was construing among other provisions that portion of "The Securities Act" having to do with civil liabilities and the remedies under Section 600a, § 33a. The Court was concerned with a transaction the like of which is not present in this appeal. There an unlicensed dealer in securities failed to secure a permit for the sale of the security and was therefore liable for the full purchase price of the security plus interest.

In 1961 in Dunnam v. Dillingham, supra, no writ history, the Court of Civil Appeals stated that "The Securities Act" did not operate to regulate buyers of securities. However, the fact situation is not the same as before us. The Court held that the transaction was exempt, i. e. where the plaintiff, an unlicensed securities dealer, sold oil and gas leases to a registered dealer in securities. We can readily see why such transactions would be exempt.

It is a familiar rule of law that the intention of the Legislature is the primary object in the construction of statutory amendments. In arriving at the intent of the Legislature the Court may look not only to the body of the Act and its caption but also to the emergency clause. Here we believe the Legislature has evidenced a clear intent in its emergency clause and by the amendment itself in the section regulating suits by unlicensed persons for the collection of a commission, by bringing in under *the Act purchasers as well as sellers* where the services rendered involves the purchase or sale of securities as that term is defined in "The Securities Act." Acts 47th Leg. 1941, supra. Appellant's first point is overruled.

Plaintiff-appellant's second, third and fourth points are briefed and argued together because they are closely related. They are in effect that the trial court erred in rendering judgment for defendants and not a partial summary judgment for plaintiff because the transaction in question was exempt under "The Securities Act." Plaintiff takes the position under the old Art. 600a, Sec. 3(i) which has been amended and is now Art. 581–5(H) and under old Art. 600a, Section 3(g) which is now Art. 581–5(G) that an exemption exists as a matter of law or at least a fact issue is raised from the summary judgment evidence as to the applicability of these exemptions.

1. Emphasis supplied.

Plaintiff argues that defendant Flato Realty Investments is really a corporation and that since all of the assets of the Main and Akard Investment Corporation were merged and consolidated into the defendants' business that such transaction was exempt under Art. 600a–3(g). This article reads as follows:

"(g) The transfer or exchange by, or on account of, one corporation to another or to its stockholders of their or its own securities in connection with a proposed consolidation or merger of such corporation, or in connection with the change of par value stock to non-par value stock or vice versa, or the exchange of outstanding shares for a greater or smaller number of shares, provided that in such case such stockholders do not pay or give or promise and are not obligated to pay or give any consideration for the securities so transferred or exchanged other than the securities of said corporation then held by them."

Plaintiff urges this Court to construe the word "corporation" in its usual and ordinary terms, that is to find that for the purpose of "The Securities Act" Flato Realty Investments is in fact a corporation. Along this line the appellant contends that defendant Flato Realty Investments is a company and "The Securities Act" defines the word "company" as follows:

"(B) The term 'company' shall include a corporation, person, joint stock company, partnership, association, company, firm, syndicate trust, incorporated or unincorporated, heretofore or hereafter formed under the laws of this or any other state, country, sovereignty or political subdivision thereof. As used herein, the term 'trust' shall be deemed to include a common law trust, but shall not include a trust created or appointed under or by virtue of a last will and testament or by a court of law or equity."

Although it is true that "company" as hereinabove defined would include a cor-

poration as the same is known under the Texas Business Corporation Act the reverse will not necessarily be true. A corporation as such could not include all of the defined businesses set forth above. Had the Legislature intended the exemption to include all types of companies we believe the same would have been stated as such. There are other reasons by which the defendant Flato Realty Investments would not be considered a corporation. A part of the summary judgment evidence is a copy of the articles of Flato Realty Investments. It is apparent to us that this business was designed and patterned to conform to Art. 6131a "Real Estate Investment Trust" and as such it is not a corporation. Article 581–5(G) (the old 600a, § 3(g)) says "corporation" and does not use the term real estate investment trust. The very language of the sub-section indicates that the same is confined to that of corporation. The defendants' business being a real estate investment trust or what is commonly known as a "Massachusetts type trust", is not a corporation.

The transaction that took place in this case did not contemplate a merger or consolidation between corporations as is required by our law in Art. 5.01 and 5.02 which relates to Texas corporations. The record shows that no vote was taken or required to be taken by the shareholders of the corporation in connection with the sale of their stock to the defendant. No corporate action was required here as would be in the case of a merger or consolidation.

This exemption is further inapplicable for the reason that the corporation stockholders agreed to hold Flato Realty Investments free and harmless from certain losses or payments; that they were to furnish the defendant with an abstract of title to the Kirby Building and that the consideration included an agreement by the shareholders of the corporation to pay some cash to permit issuance of whole shares. All of this would be in contravention of the very Art. 600a, § 3(g) which plaintiff relies upon as an exemption, as this Act prohibits the ex-

emption where the holders pay or promise to pay or are obligated to pay any consideration for the issuance of the securities sold by them, other than the receipt of the securities issued to them.

■ Plaintiff's final argument concerns the exemption of a sale of any security to a "trust company" as set forth in Art. 600a, Sec. 3(i). Appellant argues that defendant Flato Realty Investments is a "trust company". Art. 600a, Sec. 3(i) provides for certain exempt transactions. The exemption would be where:

> "(i) The sale (was) to any bank, trust company, loan and brokerage corporation, building and loan association, insurance company, surety or guaranty company, savings institution or to any registered dealer, provided such dealer is actually engaged in buying and selling securities."

In 1963 this article was amended and is now Art. 581-5(H). Plaintiff argues that the transaction represents a purchase of securities by a "trust company" pursuant to this article and therefore is exempt. An examination of the articles of the business trust of Flato Realty Investments, reflects that it is an unincorporated business association in the form of a common law trust. Business trusts such as this have been consistently held to be in the nature of business partnerships in Texas in the past. In any respect a business trust is not the same as a "trust company" as that organization is used in the statute enumerating certain exempted companies. The Legislature's intent to exempt banks, buildings and loan associations, insurance companies, surety or guaranty companies, savings institutions and like companies would not include, we think, a real estate business trust. The rule or maxim of noscitur a sociis (it is known from its associates) which is to the effect that where the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it, words employed in a statute are construed in connection with, and their meaning is ascertained by reference to the words and

phrases with which they are associated or related. 82 C.J.S. Statutes § 331, pp. 654–655. Under this rule "trust companies" associated with the other companies (such as banks, etc.) would not include a Massachusetts type real estate business trust. Appellant's points are overruled.

Judgment of the trial court is affirmed.